IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SOMAXON PHARMACEUTICALS, INC., and PROCOM ONE INC., | ) ) ) **REDACTED - PUBLIC VERSION** |
| Plaintiffs, | ) ) |
| v. | ) C.A. No. 10-1100-RGA-MPT ) |
| ACTAVIS ELIZABETH LLC et al., | ) ) |
| Defendants. | ) ) |

**OPENING BRIEF IN SUPPORT OF MYLAN PHARMACEUTICALS INC.
AND MYLAN INC.'S MOTION TO ENFORCE
SETTLEMENT AGREEMENT**

Dated December 23, 2019

*Of Counsel:*

David Steuer
WILSON SONSINI GOODRICH &
ROSATI, P.C.
650 Page Mill Road
Palo Alto, CA 94304-1050

Nicole Stafford
WILSON SONSINI GOODRICH &
ROSATI, P.C.
900 South Capital of Texas Highway
Las Cimas IV, Fifth Floor
Austin, TX 78746-5546

Stuart A. Williams
WILSON SONSINI GOODRICH &
ROSATI, P.C.
1301 Avenue of the Americas
40th Floor
New York, NY 10019-6022

John C. Phillips, Jr. (No. 110)
Megan C. Haney (No. 5016)
PHILLIPS, GOLDMAN, MCLAUGHLIN &
HALL, P.A.
1200 North Broom Street
Wilmington, Delaware 19806
(302) 655-4200
jcp@pgmhlaw.com
mch@pgmhlaw.com

*Attorneys for Mylan Pharmaceuticals Inc.
and Mylan Inc.*

## TABLE OF CONTENTS

I. INTRODUCTION ............................................................................................................. 1
II. BACKGROUND ............................................................................................................... 2
   A. 2012 Settlement of Patent Litigation between Mylan, Somaxon, and ProCom ................. 2
   B. Currax Acquires Its Interest in the Agreement and the Silenor® NDA and Product in April 2019 ............................................................................................................................. 4
   C. Currax Breaches the Settlement Agreement in December 2019 ......................................... 5
III. ARGUMENT .................................................................................................................... 6
   A. This Court Has Jurisdiction to Enforce the Settlement Agreement ..................................... 7
   B. The Settlement Agreement between Mylan and Somaxon Is Binding and Enforceable .... 8
   C. Currax Has Materially Breached the Settlement Agreement ............................................ 10
   D. Mylan Has Incurred and Will Continue to Incur Harm from Currax's Breach ................ 11
IV. CONCLUSION ............................................................................................................... 11

# TABLE OF AUTHORITIES

## CASES

*eCOMMERCE Indus. v. MWA Intelligence Inc.*, C.A. No. 7471, 2013 WL
    5621678 (Del. Ch. Sept. 30, 2013) ...........................................................................................6

*In re T2 Med., Inc. Shareholder Litig.*, 130 F.3d 990 (11th Cir. 1997) ..........................................4

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994) .................................................7

*Parker-Hannifin Corp. v. Schlegel Elec. Materials, Inc.*, 589 F. Supp. 2d 457 (D.
    Del. 2008) ..................................................................................................................................8

*Preferred Inv. Servs., Inc. v. T&H Bail Bonds, Inc.*, C.A. No. 5886, 2013 WL
    3934992 (Del. Ch. July 24, 2013) ...........................................................................................10

## STATUTES

21 U.S.C. § 355(j)(2)(A)(vii)(IV) ...............................................................................................1, 10

21 U.S.C. § 355(j)(5)(B)(iv) .......................................................................................................2, 10

28 U.S.C § 1332 ...............................................................................................................................8

## RULES

Local Rule 7.1.1 ...............................................................................................................................7

## MISCELLANEOUS

U.S. Patent No. 6,211,229 ................................................................................................................1

U.S. Patent No. 7,915,307 ............................................................................................................1, 2

I.  **INTRODUCTION**

Defendants and Counterclaim-Plaintiffs Mylan Pharmaceuticals Inc. and Mylan Inc. (collectively, "Mylan") respectfully submit this Memorandum of Law in support of their Motion to Enforce Settlement Agreement to enforce the Settlement and License Agreement entered into between Mylan and Plaintiffs and Counterclaim-Defendants Somaxon Pharmaceuticals, Inc. ("Somaxon") and ProCom One, Inc. ("ProCom") dated July 17, 2012 (the "Agreement").

As explained below, Currax Pharmaceuticals LLC, Currax Holdings LLC, and Currax Holdings USA LLC (collectively, "Currax") are Somaxon's successors-in-interest to the Agreement. Now that Currax and its predecessors-in-interest have benefitted significantly from the terms of the Agreement, Currax presently seeks to deprive Mylan from the benefit of its bargain. Currax has waited until a mere two months before Mylan's contractually agreed launch of the first Authorized Generic of Silenor® to inform Mylan that it refuses to honor a key provision of the Agreement.

Specifically, the Agreement plainly prohibits Currax from  , which runs for ▇▇ starting on January 1, 2020. Asserting without basis that this provision is invalid, unenforceable, and severable from the Agreement, ▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Because Currax's activities constitute a direct violation of the Agreement, Mylan now seeks an order: (1) enforcing the Agreement, (2) finding that Currax breached the Agreement, (3) requiring Currax to abide by its terms, and (4) awarding damages and attorney's fees to Mylan.

1

## II. BACKGROUND

### A. 2012 Settlement of Patent Litigation between Mylan, Somaxon, and ProCom

This action relates to the settlement of patent litigation based on a potential generic drug to the branded drug Silenor®, which is used to treat insomnia characterized by difficulties with sleep maintenance. Specifically, Mylan filed a substantially complete Abbreviated New Drug Application ("ANDA") with a certification under 21 U.S.C. § 355(j)(2)(A)(vii)(IV) to at least one patent listed in the FDA Orange Book for Silenor®, on the first date such an ANDA was filed. *See* D.I. 20 ¶¶ 45-48. Subsequently, on November 2, 2010, Mylan notified Somaxon and ProCom that Mylan had submitted an ANDA seeking FDA approval to market a generic of doxepin hydrochloride tablets before expiration of U.S. Patent No. 6,211,229, owned by ProCom and exclusively licensed to Somaxon ("'229 Patent"), and U.S. Patent No. 7,915,307 owned by Somaxon ("'307 Patent"). *See id.* ¶¶ 48-49; D.I. 1 ¶¶ 28-29. Notably, the '307 Patent is not set to expire until August 24, 2027.

Following Mylan's notice, Somaxon and ProCom filed this suit on December 15, 2010, claiming infringement of the '229 Patent by Mylan and other ANDA filers; Somaxon filed an additional suit against Mylan for infringement of the '307 Patent on June 28, 2011. *See generally* D.I. 1. During the discovery phase of litigation, Mylan, Somaxon, and ProCom resolved the claims among them. On July 17, 2012, the parties signed and executed the Agreement, and this Court entered an order granting the stipulated dismissal the following day. *See* D.I. 234 ("Dismissal Order"). The Dismissal Order makes clear that "[t]his Court retains jurisdiction over the Parties for purposes of enforcing this Order." *Id.* at 2. Furthermore, the Dismissal Order states that "[a]s a result of the Agreement, there will be an opportunity for pro-competitive generic competition for doxepin hydrochloride products for human use, which

2

competition otherwise may not have existed until the expiration of the Licensed Patents and any applicable period of exclusivity." *Id.*

Under the Agreement, Somaxon and ProCom granted to Mylan the semi-exclusive right to sell an authorized generic of Silenor® 3 mg and 6 mg doxepin hydrochloride in the U.S. and its territories for a period of ▅▅▅ beginning on January 1, 2020 ("AG License Initial Period"). *See* Stafford Decl., Ex. 1 ("Agreement"). The AG License Initial Period is characterized as "semi-exclusive" because ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅ *Id.* § 5.1(a). Mylan bargained for this right in part due to its status as a first filer with statutory entitlement to 180-day generic exclusivity, shared with at most one other generic filer who also filed such an ANDA on that date. *See* 21 U.S.C. § 355(j)(5)(B)(iv). Furthermore, the Agreement makes clear that "▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅" Agreement, § 5.1(a).

None of the original parties to the Agreement ever expressed any concerns or reservations concerning Section 5.1(a) or any other provision. In fact, the parties represented and warranted that "this Agreement has been duly executed and delivered by it and is a binding obligation of it, enforceable against it and its Affiliates in accordance with its terms" and that "the execution and delivery of this Agreement and the performance by such Party or its Affiliates

---

[1] The Agreement defines an "Authorized Generic Product" as "a Generic Product that is manufactured, used, sold, offered for sale or distributed pursuant to the [Silenor®] NDA, but that is not marketed under the [Silenor®] Trademark." The Agreement defines a "Generic Product" as a 3 mg or 6 mg doxepin hydrochloride product that is a generic of Silenor® and has an 'AB' rating from the FDA.

3

of any of its obligations hereunder do not and will not conflict with (i) any judgment of any court or governmental body applicable to such Party or its Affiliates or its respective properties . . . or (iii) to such Party's knowledge, any statute, decree, order, rule or regulation of any court or governmental agency or body applicable to such Party, its Affiliates or their respective properties." *Id.* § 9.1(c)-(d).

### B.  Currax Acquires Its Interest in the Agreement and the Silenor® NDA and Product in April 2019

On December 11, 2012, Pernix Therapeutics Holdings, Inc. ("Pernix") entered into an agreement to acquire Somaxon, and the acquisition was completed on or around March 6, 2013. *See* Stafford Decl., Ex. 2 (Somaxon/Pernix Press Release). As a result of that acquisition, Pernix became Somaxon's successor-in-interest to the Agreement.

Subsequently, in April 2019, Currax acquired its interest in the Agreement, the Silenor® NDA, and Silenor® through a series of complex transactions culminating in the formation of Currax and its parent company Currax Holdings, LLC ("Currax Holdings"). Specifically, following Pernix's filing for Chapter 11 bankruptcy on February 18, 2019, Pernix entered into an asset purchase agreement with Phoenix Top Holdings, LLC ("Phoenix"), which later became Currax Holdings.[2] *See* Stafford Decl., Ex. 3 at 6 ("Amended and Restated Asset Purchase Agreement"). On or about April 15, 2019, Currax Holdings LLC and Pernix entered into an amended asset purchase agreement which closed on or about May 1, 2019. *See id.* As a result of that agreement, Currax became Pernix's successors-in-interest to the Silenor® NDA, the '229 and '307 Patents, additional patents that are or have been listed in the FDA Orange Book for

---

[2] Presumably, through its due diligence in connection with the acquisition, Currax became familiar with Pernix's various rights and obligations under the Agreement at least in early 2019. *See generally* Amended and Restated Asset Purchase Agreement.

4

Silenor®, and the Agreement. *See* Stafford Decl., Exs. 4-5 (Complaint, *Currax Pharmaceuticals LLC v. Zydus Pharmaceuticals (USA) Inc.*); Currax-Pernix Patent Assignment Agreement).[3]

### C.  Currax Breaches the Settlement Agreement in December 2019

On November 6, 2019, almost six months after completing its acquisition of Pernix's assets, Currax Pharmaceuticals LLC reached out to Mylan, claiming to be Somaxon's successor in connection with the Agreement and informing Mylan of ███████████████████ ████████████████████████████████████████████ Currax offered no explanation for its delay in contacting Mylan. In spite of the benefits Currax and its predecessors have reaped from the Agreement, Currax now asserts that any interpretation of Section 5.1(a) to restrict Currax's ability to ████████████████████████████ ████████████████████████████████████████████ ███████████ would render Section 5.1(a) of the Agreement invalid and unenforceable.

In so arguing, Currax insists that, pursuant to the Agreement's severability clause, Currax can unilaterally decide to ignore limitations imposed on Currax by Section 5.1(a) and continue operating under the Agreement without that provision. However, Currax made no efforts to seek to enforce the severability clause through appropriate channels, such as by submitting the parties' Agreement to a court or other administrative proceeding for a determination of the validity and enforceability of the provision to which it now objects.

In response, Mylan objected to Currax's reading of Section 5.1(a) and its unsupported interpretation of the law. Mylan explained to Currax █████████████████████ ███████████████████████████████ would be a material breach of the

---

[3] Although Currax is not a party to the initial lawsuit, the parties are in agreement that Currax is the successor-in-interest to the Agreement. *See, e.g., In re T2 Med., Inc. Shareholder Litig.*, 130 F.3d 990, 991 n.1 (11th Cir. 1997) (noting that parties agreed upon successor-in-interest status for new party that was created from merger with initial party to lawsuit).

5

Agreement. Mylan further explained that the severability clause, which applies in the event any provision of the Agreement is "held to be invalid or unenforceable" cannot be unilaterally invoked by a party in the absence of any applicable legal or administrative authority. *See* Agreement, § 12.4). In the ensuing days, despite Mylan's multiple attempts to persuade Currax to honor the terms of the Agreement, Currax has steadfastly refused to alter its course.

On December 16, 2019, two weeks before the start of the AG License Initial Period, Currax and/or its subsidiary, Macoven Pharmaceuticals, L.L.C. ("Macoven"), began marketing doxepin hydrochloride 3 mg and 6 mg oral tablets, advertising a wholesale acquisition cost (WAC) price of $349.20 per package of 30 tablets. *See* Stafford Decl., Ex. 6 ("ProspectoRX Report"). Mylan learned of Macoven's marketing activity on December 20, 2019, and informed Currax shortly thereafter that Currax was in material breach of the Agreement.

## III. ARGUMENT

Currax and its predecessors-in-interest have benefitted from the terms of the Agreement. With less than two months before the AG License Initial Period and Mylan's launch of its Authorized Generic Product, Currax now attempts to deprive Mylan of the rights it bargained for, claiming that Section 5.1(a) of the Agreement is invalid and unenforceable. Currax's position is unfounded, as it mischaracterizes the nature of the Agreement's severability provision and ignores the parties' representations and warranties to the contrary. Moreover, Currax offers no justification for its delay in informing Mylan of its position. Indeed, ██████████ ████████████████████████████████████████████ all the while knowing it intended to breach this Agreement.

Currax has materially breached the binding and enforceable Agreement, resulting in significant harm to Mylan. *See eCOMMERCE Indus. v. MWA Intelligence Inc.*, C.A. No. 7471, 2013 WL 5621678, at *13 (Del. Ch. Sept. 30, 2013) ("To be successful on a breach of contract

claim, a party must prove: (1) the existence of a contract; (2) the breach of an obligation imposed by the contract; and (3) damages that the plaintiff suffered as a result of the breach."). ███

███████████████████████████████████████████
████████████████████████████████ Mylan incurs damages in the form of lost revenues, loss of market share, price erosion, and loss of customer goodwill.

Mylan now submits this Motion, seeking an order enforcing the Agreement, finding that Currax is in breach, requiring Currax to abide by the Agreement, and awarding monetary damages and attorney's fees to Mylan, as Currax's breach will result in Mylan suffering such losses as lost revenue, lost market share, lost customer goodwill, and price erosion. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 378 (1994) ("Enforcement of the settlement agreement, however, *whether through award of damages or decree of specific performance*, is more than just a continuation or renewal of the dismissed suit . . .") (emphasis added). In accordance with District of Delaware Local Rule 7.1.1, Mylan has made reasonable efforts to reach agreement with Currax concerning this Motion.

### A. This Court Has Jurisdiction to Enforce the Settlement Agreement

As a preliminary matter, this Court has jurisdiction to rule on this Motion. In *Kokkonen*, the Supreme Court explained that federal district courts have ancillary jurisdiction to enforce settlement agreements where "the parties' obligation to comply with the terms of the settlement agreement had been made part of the order of dismissal." *Id.* at 381. That is, jurisdiction exists in instances where a court either: (1) expressly retains jurisdiction over the settlement agreement, or (2) incorporates the terms of the settlement agreement in its order. *See id.* ("In that event, a breach of the agreement would be a violation of the order, and ancillary jurisdiction to enforce the agreement would therefore exist.").

7

Here, the Court's Dismissal Order clearly states that "[t]his Court retains jurisdiction over the Parties for purposes of enforcing this Order." D.I. 234 at 2. Moreover, the Dismissal Order directly references aspects of the Agreement. *See id.* (enjoining Mylan from marketing during the term of the patents-in-suit, "except to the extent permitted by the Settlement and License Agreement, and any subsidiary agreements, entered into between the parties, dated July 17, 2012"). As such, this Court has ancillary jurisdiction to enforce the Agreement and, similarly, determine whether Currax has breached the Agreement.[4]

### B. The Settlement Agreement between Mylan and Somaxon Is Binding and Enforceable

Delaware law recognizes that "[a] settlement agreement is a contract enforceable by local law." *Parker-Hannifin Corp. v. Schlegel Elec. Materials, Inc.*, 589 F. Supp. 2d 457, 461 (D. Del. 2008); *see* Agreement, § 12.2 ("This Agreement shall be governed, interpreted and construed in accordance with the laws of the State of Delaware, without giving effect to choice of law principles.").

Here, the validity and enforceability of the Agreement cannot be disputed, as the Agreement is the result of arm's length negotiations, the parties filed a proposed consent judgment and dismissal order with this Court upon reaching the Agreement, and the parties have honored the terms of the Agreement for over seven years. What Currax now disputes is the validity of a single provision of the Agreement – that it ████████████████████ ████████████████████████████████████████████████ Agreement § 5.1(a). In support of its position, Currax unilaterally maintains that this provision is legally

---

[4] Mylan notes that, even if this Court did not have ancillary jurisdiction, the Court has subject matter jurisdiction under 28 U.S.C § 1332 because this is a civil action between citizens of different states and because Currax's breach will result in Mylan suffering losses in excess of $75,000.

8

invalid or unenforceable and may be severed from the Agreement, thus preserving all other obligations and responsibilities under the Agreement.

Currax's argument fails. *First*, Currax mischaracterizes the Agreement's severability clause. Pursuant to that clause, a provision of the Agreement may be severed from the Agreement, without affecting the parties' rights or obligations under the remaining provisions of the Agreement, if it is *"held* to be invalid or unenforceable." Agreement, § 12.4 (emphasis added). Currax does not and cannot point to any legal or administrative authority holding that Section 5.1(a) of the Agreement is invalid or unenforceable, which is what the severability clause requires. Nor is there any basis for Currax's position that a party may unilaterally alter the terms of an agreement by declaring which provisions it will and will not perform or respect. Indeed, if a party could do so, such an agreement would be invalid for lack of consideration.

*Second*, even if Section 5.1(a) were held to be invalid or unenforceable in a legal or administrative proceeding, which is not the case here, the severability clause requires that the parties engage in good faith negotiations "to provide a reasonably acceptable alternative to such provision, it being the intent of the Parties that the basic purposes of this Agreement are to be effectuated." Agreement, § 12.4. Therefore, under no set of circumstances may a party simply strike out a provision of the Agreement and continue proceeding under the Agreement without renegotiating a substitute provision.

*Third*, Currax's position contradicts the parties' representations and warranties concerning the binding and enforceable nature of the Agreement. *See* Agreement, § 9.1(c)-(d) ("this Agreement has been duly executed and delivered by it and is a binding obligation of it, enforceable against it and its Affiliates in accordance with its terms" and "the execution and delivery of this Agreement and the performance by such Party or its Affiliates of any of its

9

obligations hereunder do not and will not conflict with . . . (iii) to such Party's knowledge, any statute, decree, order, rule or regulation of any court or governmental agency or body applicable to such Party, its Affiliates or their respective properties").

### C. Currax Has Materially Breached the Settlement Agreement

On December 20, 2019, Mylan discovered that Currax's subsidiary, Macoven, was marketing another authorized generic of Silenor®. *See* Stafford Decl., Ex. 6. Based on pricing posted on ProspectoRX and statements by Currax during discussions between the parties, ███████████████████████████████████████████. *See id.* It cannot be disputed that ███████████████████████████████ of Silenor® is in direct violation of the Agreement. *See* Agreement, § 5.1(a) ███████████ ██████████████████████████████████████████████████ ███████████████████. As explained above, the AG License Initial Period begins on January 1, 2020 and lasts for ██████. *See id.* § 1.2. Under the clear terms of the Agreement, Currax is not permitted to ███████████████████ until ██████.

Under Delaware law, a breach is material when it "touches the fundamental purpose of the contract and defeats the object of the parties in entering into the contract." *Preferred Inv. Servs., Inc. v. T&H Bail Bonds, Inc.*, C.A. No. 5886, 2013 WL 3934992, at *11 (Del. Ch. July 24, 2013). Here, Mylan's sole right to sell an authorized generic of Silenor® in the U.S. and its territories for a period of ██████ beginning on January 1, 2020 was essential to the Agreement. Because Mylan filed a substantially complete ANDA with a certification under 21 U.S.C. § 355(j)(2)(A)(vii)(IV) to at least one patent listed in the FDA Orange Book for Silenor® the first date such an ANDA was filed, Mylan would have been entitled to 180 days of generic semi-exclusivity under 21 U.S.C. § 355(j)(5)(B)(iv). *See* D.I. 20 ¶¶ 45-48. As such, Mylan bargained

10

for a similar right when negotiating the Agreement with Currax's predecessors-in-interest, and Currax's attempt to erase this right from the Agreement "defeats the object of the parties."

### D. Mylan Has Incurred and Will Continue to Incur Harm from Currax's Breach

Lastly, Currax's breach of the Agreement has caused, and will continue to cause substantial harm to Mylan. Each day that ███████████████████████████████ ███████████████████████████████████ in breach of the Agreement, Mylan incurs damages in the form of lost revenues, loss of market share, price erosion, and loss of customer goodwill. Moreover, the potential for competitive harm to Mylan is especially significant because the first authorized generic to enter a market enjoys a first mover advantage that typically leads to long-term enhanced market share and long-term contracts. Such advantages are precisely why Mylan negotiated and bargained for the AG License Initial Period in the Agreement.

## IV.  CONCLUSION

For the foregoing reasons, Mylan respectfully requests that the Court grant its Motion to Enforce the Settlement Agreement, and enter an order: (1) enforcing the Agreement, (2) finding that Currax breached the Agreement, (3) requiring Currax to abide by its terms, and (4) awarding damages and attorney's fees to Mylan.

Dated: December 23, 2019

PHILLIPS, GOLDMAN MCLAUGHLIN & HALL, P.A.

*/s/ John C. Phillips, Jr.*
John C. Phillips, Jr. (#110)
Megan C. Haney (#5016)
1200 North Broom Street
Wilmington, DE 19806
(302) 655-4200
jcp@pgmhlaw.com
mch@pgmhlaw.com

*Of Counsel:*

David Steuer
WILSON SONSINI GOODRICH &
ROSATI, P.C.
650 Page Mill Road
Palo Alto, CA 94304-1050

Nicole Stafford
WILSON SONSINI GOODRICH &
ROSATI, P.C.
900 South Capital of Texas Highway
Las Cimas IV, Fifth Floor
Austin, TX 78746-5546

Stuart A. Williams
WILSON SONSINI GOODRICH &
ROSATI, P.C.
1301 Avenue of the Americas
40th Floor
New York, NY 10019-6022

## CERTIFICATE OF SERVICE

I, Megan C. Haney, Esquire, hereby certify that on December 23, 2019, a copy of the Opening Brief in Support of Mylan Pharmaceuticals Inc. and Mylan Inc.'s Motion to Enforce Settlement Agreement was caused to be served upon the following counsel via electronic mail:

Jack B. Blumenfeld
Jeremy A. Tigan
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
Wilmington, DE 19801
jblumenfeld@mnat.com
jtigan@mnat.com

William F. Lee
Christine Duh
Lisa J. Pirozzolo
Emily R. Whelan
Wilmer Cutler Pickering
Hale and Dorr LLP
60 State Street
Boston, MA 025109
William.lee@wilmerhale.com
Christine.duh@wilmerhale.com
Lisa.pirozzolo@wilmerhale.com
Emily.whelan@wilmerhale.com

/s/ *Megan C. Haney*
Megan C. Haney (#5016)

1